















```
RYC    5/6/03    14:05
3:02-CV-00674   COLLINS V. JC PENNEY LIFE INS
*21*
*O.*
```

FILED

03 MAY -6 AM 8:12

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THELMA COLLINS,<br><br>                              Plaintiff,<br>vs.<br><br>JC PENNEY LIFE INSURANCE<br>COMPANY, and DOES 1 - 20,<br><br>                              Defendants. | Case No.  02cv0674-L(LAB)<br><br>**ORDER RE JOINT STATEMENT<br>OF DISCOVERY DISPUTES**<br><br>[Dkt No. 13] |

This matter is before the court on the parties' Joint Statement Re Discovery Disputes ("Joint Statement").  Plaintiff Thelma Collins ("Collins") seeks to compel supplemental responses to discovery she propounded to defendant JC Penney Life Insurance Company ("JC Penney").  Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues appropriate for decision on the papers and without oral argument.

## I.    BACKGROUND

In her Complaint For Damages in this insurance bad faith action, Collins alleges, among other things, her husband Lawrence Collins entered a written contract with JC Penney and a Doe financial institution for $1,000,000 of Accidental Death and Dismemberment ("AD&D") group insurance, naming her as the beneficiary.  She contends her husband died following a surgical procedure in circumstances entitling her to collect insurance proceeds under the AD&D policy.  Collins claims JC Penney breached the insurance contract, breached the implied covenant of good faith and fair dealing,

1    was negligent, and violated CAL. BUS. & PROF. CODE §§ 17200, 17500 through allegedly unfair and

2    fraudulent business practices in its policy solicitation and its denial of benefits. Collins seeks breach

3    of contract and emotional distress damages, punitive damages, and injunctive and equitable relief on

4    behalf of herself, and "restitution" damages and injunctive relief for members of "the general public."

5    JC Penney contends, among other things, an exclusion in the AD&D policy for death "due to disease,

6    bodily or mental infirmity, or medical or surgical treatment of these" precludes any insurance coverage

7    obligation and accordingly all Collins' claims in this case. Jnt Stmt 10:22-23.

8        The parties' Joint Statement identifies four categories of disputed discovery involving Collins'

9    admission requests, interrogatories, document production requests, and FED.R.CIV.P. ("Rule") 30(b)(6)

10    deposition notices. The parties have attached as exhibits to the Joint Statement only the discovery as

11    propounded, not including JC Penney's actual responses. The court is consequently unable to ascertain

12    the adequacy of any actual response other than as may be gleaned from the parties' discussion of their

13    specific disputes. The court therefore relies on the parties' representations for the instant rulings.

14    **II.**    **DISCUSSION**

15       **A.**    <u>**Legal Standards**</u>

16            **1.**    <u>**Discovery**</u>

17        In diversity actions, where state law controls the substance of the lawsuit, procedural law is

18    provided by federal authority, including for discovery purposes. *See* <u>Aceves v. Allstate Ins. Co.</u>, 68

19    F.3d 1160, 1167 (9th Cir. 1995), *citing* <u>Hanna v. Plumer</u>, 380 U.S. 460, 472-474 (1965). The Federal

20    Rules of Civil Procedure ("Rules") permit liberal discovery: "Parties may obtain discovery regarding

21    any matter, not privileged, that is *relevant to the claim or defense* of any party . . . For good cause, the

22    court may order discovery of any matter *relevant to the subject matter* involved in the action. . . ."

23    Rule 26(b)(1) provides (emphasis added). A showing of "good cause" adequate to warrant expanding

24    the scope of discovery beyond the "claim or defense" limitation must demonstrate the broader inquiry

25    is justified by the particular needs of the case. *See* <u>Thompson v. Dept. of Housing & Urban Dev.</u>, 199

26    F.R.D. 168, 172 (D.MD 2001).

27        "Relevant information need not be admissible at trial if the discovery appears reasonably

28    calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). However, the relevancy

1   showing is insufficient if it relies on a theory that matters not presently germane to a claim or defense

2   might conceivably become so. <u>Food Lion, Inc. v. United Food & Comm'l Workers Union</u>, 103 F.3d

3   1007, 1012-1013 (DC Cir. 1997).  The court may limit discovery if "(i) the discovery sought is

4   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

5   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

6   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense

7   of the proposed discovery outweighs its likely benefit . . . ."  Rule 26(b)(2).

8        A party objecting to discovery may seek a protective order from the court, or the propounding

9   party may move to compel responses.  Rule 26(c); Rule 37(a)(2)(B).  Evasive or incomplete

10   disclosures, answers, or responses are "to be treated as a failure to disclose, answer, or respond." Rule

11   37(a)(3).  "The party who resists discovery has the burden to show that discovery should not be

12   allowed, and has the burden of clarifying, explaining, and supporting its objections."  <u>Cable &</u>

13   <u>Computer Technology, Inc. v. Lockheed Saunders, Inc.</u>, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

14        **2.   <u>Interrogatories</u>**

15        All grounds for objection to an interrogatory must be stated with specificity and particularized

16   as to the basis for the objection.  Rule 33(b)(4).

17        Each interrogatory shall be answered separately and fully in writing
     under oath, unless it is objected to, in which event the objecting party

18        shall state the reasons for objection *and shall answer to the extent the*

19        *interrogatory is not objectionable.*

     Rule 33(b)(1) (emphasis added).

20

21        "Bare assertions that the discovery requested is overly broad, burdensome, oppressive or

     irrelevant are ordinarily insufficient, standing alone, to bar production." <u>Continental Ill. Nat'l Bank</u>

22   <u>& Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684 (D.Kan.1991).  The burden is on the responding

23   party to justify its objections or its failure to provide complete answers to interrogatories.  Rule 33(a),

24   Advisory Committee Notes (1970).

25        **3.   <u>Document Production</u>**

26        Parties to the action may be compelled to produce relevant documents in their "possession,

27   custody or control":

28

> Any party may serve on any other party a request (1) to produce and permit the party making the request . . . to inspect and copy, any designated documents . . . which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served . . . .

Rule 34(a).

> . . . The party upon whom the [document] request is served shall serve a written response within 30 days after the service of the request. . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. . . .

Rule 34(b).

In addition to Rule 34 requests, documents may be obtained from parties or party-affiliated witnesses through a deposition notice or from non-party witnesses through a deposition subpoena. Rule 30(b)(5); Rule 45(a)(1)(C), (D).

### 4.   Admissions

Admission requests serve purposes different from other forms of discovery. "Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Note to Rule 36(a), 48 F.R.D. 531, 533 (1970) ("Advisory Committee Note"). Documents and testimony provide a party with evidence it can use to prove facts at trial. Admissions eliminate issues for trial by establishing facts without requiring additional proof. Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981) ("[t]he purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial"). Admissions are binding for purposes of the action in which they are made. Rule 36(b). The federal rules impose duties of inquiry and specificity on a responding party. Rule 36(a) provides, in pertinent part (emphasis added):

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . .
>
> The matter is deemed admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . If objection is made, the reasons therefor shall be stated. **The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission**

1    **is requested, the party shall specify so much of it as true and qualify or deny the**
     **remainder.**  An answering party may not give lack of information or knowledge as a
2    reason for failure to admit or deny unless the party states that the party has made
     reasonable inquiry and that the information known or readily obtainable by the party
3    is insufficient to enable the party to admit or deny. . . .

4         An answering party must "make reasonable inquiry and secure such knowledge and information

5    as are readily obtainable by him."  <u>Asea</u>, 669 F.2d at 1246.  "The party who has requested the

6    admission may move to determine the sufficiency of the answers or objections."  Rule 36(a).

7    **B.    The Court Narrows The Issues To Be Decided**

8         The parties divide their discovery disputes into four categories, which the court addresses

9    separately below.  However, preliminarily, the court addresses:  (1) entitlement to the disputed

10   discovery based on Collins' suggestion she represents any class or the general public; (2) the disputed

11   discovery insofar as Collins relies on argument that it is relevant to her punitive damages claim; and

12   (3) JC Penney's request for bifurcation of issues.

13        To the extent Collins contends she is entitled to obtain certain discovery in some representative

14   capacity or on behalf of "the public," the court accords no weight to that argument in deciding the

15   discovery disputes presented here.  Collins has not brought her lawsuit as a putative class action.

16   Moreover, the court is persuaded that until Collins has demonstrated that *in her case* JC Penney acted

17   wrongfully or engaged in unfair and deceptive practices and injured her, she would have no standing

18   to demand discovery in any representative capacity.

19        Collins contends: "Evidence that JC Penney has regularly denied legitimate claims is

20   circumstantial evidence of intent, scheme, motive will [*sic*] establish malice for purposes of plaintiff's

21   punitive damages claim."  Jnt Stmt 7:4-6, citing <u>Colonial Life & Accident Ins. Co. v. Superior Court</u>,

22   31 Cal.3d 785, 792 (1982).  The court finds discovery for punitive damages purposes is premature.

23   Suspicions and speculation cannot substitute for at least some showing that JC Penney "has regularly

24   denied legitimate claims," at present an unsupported allegation.  Denial statistics standing alone do

25   not establish that "legitimate claims" were denied.  Absent evidence of conduct amounting to

26   oppression, fraud, or malice *in the particular case*, there is no ground to try a punitive damages claim.

27   *See* <u>Stewart</u>, 17 Cal.App.4th at 478-479.  Without expressing any opinion on the merits of any claim

28   or defense in this case, to the extent it appears to this court that certain business, financial, or other

1    information Collins seeks from JC Penney is relevant solely or primarily for purposes of punitive

2    damages calculation, Joint Statement issues addressing such discovery are restricted at this time.[1]

3            Finally, JC Penney requests that certain liability issues be tried before others and before

4    damages. Bifurcation requests should be directed to the District Judge assigned to this case.

5            **C.    Category One Discovery Issues**

6            "Plaintiff requests and JC Penney objects to discovery of other [California] insureds' claim

7    information and claim files . . ." For purposes of moving to compel the discovery, Collins has narrowed

8    the scope of her initial request(s) to: (1) California claimants; (2) claiming under a GC302 certificate;

9    (3) denied on the same ground as was Collins' claim; (4) with time frame shortened to 1997 to the

10   present; and (5) only those files handled by the same four individuals who handled Collins' claim. Jnt

11   Stmt 8:1-10. The court proceeds with the understanding the scope of the discovery at issue in this

12   category is the scope as narrowed by Collins' representations in the Joint Statement.

13           Category One disputes affect Collins' "30(b)(6) deposition notices for witnesses knowledgeable

14   on 'other claim' information,"[2] Collins' Interrogatories Nos. 3[3] and 4,[4] and her Document Production

15

16

[1]     The court observes that "bad faith" is not coextensive with "oppression, fraud, and malice."
17      Stewart v. Truck Ins. Exchange, 17 Cal.App.4th 468, 483 (1993). Bad faith breach of
        contract, or even a company policy evidencing bad faith claims handling practices, does not
18      support punitive damages claims based on oppression, fraud, malice, or despicable conduct
        unless the conduct actually occurred in the case at bar. Id. at 478-479.
19

[2]     The court assumes the issue involves the third Most Knowledgeable Person and document
20      description in Collins' Deposition Notice: "The person most qualified to testify about the
        adjustment or resolution of the claims made under AD&D policies or certificates for each of
21      the years 1996 through 2002, that is of the number of claims made, what number of claims
        were paid, what number of claims were denied and the reasons for the denial, and what
22      number of claims were considered abandoned." Jnt Stmt Ex. "D" p. 9.

23 [3]    Interrogatory No. 3: "IDENTIFY each and every CALIFORNIA CLAIMANT who made a
        CLAIM for benefits with YOU under a Form GC 302 Certificate of Insurance in the time
24      period of 1995 to the present, where YOU denied the claim on the grounds that there was an
        'Injury due to disease, bodily or mental infirmity, or medical or surgical treat treatment these
25      [sic],' (generally known as Exclusion No. 7 in YOUR AD&D policies), words [sic] to the
        same effect." Jnt Stmt Ex. "A", p. 3.
26

[4]     Interrogatory No. 4: "IDENTIFY each and every CALIFORNIA CLAIMANT who made a
27      CLAIM for benefits with YOU under a Form GC 302 Certificate of Insurance in the time
        period of 1995 to the present, where YOU denied the claim on the grounds that 'the loss was
28      not attributable to an accidental bodily injury directly and independently of all other causes,'
        or words to the same effect." Jnt Stmt Ex. "A", p. 3.

1  Request Nos. 30[5] and 31.[6]  Jnt. Stmt 2:4-5.

2      Collins argues she needs to discover other insureds' claim files and other claimant information

3  to support her allegations that JC Penney misrepresented the insurance policy.  She speculates that

4  discovery will disclose incriminating representations or failures to disclose the AD&D exclusions JC

5  Penney relies on to deny her benefits, exposing JC Penney's allegedly bad faith claims handling

6  practices, and policy interpretation relevant to her breach of contract claim.  Jnt Stmt pp. 4-6. Collins

7  contends not only are the claims files relevant to her punitive damages claim under CAL. CIV. CODE §

8  3294 for conduct constituting oppression, fraud, or malice on the basis of purported "regular" denial

9  of legitimate claims, but also to her claim of pattern and practice bad faith in "wrongfully representing

10  coverage and wrongfully denying coverage and unfairly adjusting claims." Jnt Stmt 6:21-7:6.

11      The viability of a bad faith claim against an insurer arises solely from the contract under which

12  the plaintiff claims. Gibson v. Government Employees Ins. Co., 162 Cal.App.3d 441, 447-448 (1984);

13  New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.. 7 Cal.App.4th 1088, 1096 (1992)

14  ("neither the duty nor the covenant of good faith and fair dealing extends beyond the terms of the

15  insurance contract in force between the parties"). JC Penney convincingly argues allegations of "bad

16  faith" and "unfair business practices," standing alone, are not adequate to overcome the objection that

17  a predicate act of similar misconduct in the claimant's own case must be shown before relevance can

18  be established for other claims discovery.  Jnt Stmt 10:7-11.  JC Penney objects on grounds of

19  oppression and undue burden, as well as asserting its insureds' privacy interests, and argues Collins has

20  not offered any evidence of incidents suggesting a pattern of JC Penney misconduct. Jnt Stmt 9:16-17.

21  No inference or conclusion can be drawn regarding the propriety of a particular denial until each is

---

23  [5]  Document Request No. 30:  "All claims files, along with the relevant solicitation scripts, transcripts and marketing materials for CALIFORNIA CLAIMANTS who made a CLAIM under a Form GC 302 Certificate of Insurance during the time of 1996 through 2002, where YOU denied the CLAIM contending that the claim was excluded because of the exclusion of 'Injury due to disease, bodily or mental infirmity, or medical or surgical treatment of these.'" Jnt Stmt Ex. "B", p. 9.

26  [6]  Document Request No. 31:  "All claims files, along with the relevant solicitation scripts, transcripts and marketing materials, CALIFORNIA CLAIMANTS who made a CLAIM under a Form GC 302 Certificate of Insurance during the time of May 1996 through 2002, where YOU denied the CLAIM by a statement to the effect that 'the claim was excluded or not payable because the loss was not attributable to an accidental bodily injury directly and independently of all other causes.'" Jnt Stmt Ex. "B", p. 9.

1  evaluated on its own merits. The lynchpin is not whether JC Penney denied claims similar to Collins'
2  but rather whether the denials were appropriate, on the facts and circumstances of each particular case.
3  Collins' summary assertion that JC Penney "has regularly denied legitimate claims" will beg the
4  question in each instance whether the claim was in fact a "legitimate" one and the denial wrongful. The
5  court finds Collins' claim compared to that of any other AD&D policy claimant would involve non-
6  uniform liability issues, as the nature of the allegations and the exclusion language at issue demand a
7  fact-intensive review of the non-parties' individualized circumstances.  *See* Jnt Stmt pp. 15-16.

8       JC Penney contends the policy provision it relies on to deny Collins' claim is "clear and
9  unambiguous" and excludes coverage for Mr. Collins' death. Jnt Stmt 10:21. Collins contends the
10  accident during surgery causing death falls outside the scope of the exclusion. That threshold dispute
11  affects all the other claims. It is unclear how this dispute would be advanced by discovery of any other
12  insured's claim file, even if a claim under the same policy provision also had been denied. Similarly,
13  the discovery of other insureds or their claims files would not confirm whether JC Penney informed Mr.
14  Collins of the relevant policy exclusion.

15      The declaration of Charles K. Costa, JC Penney's Vice President of Claims, under penalty of
16  perjury, substantiates JC Penney does not have automated means of identifying those claims files
17  responsive to this category of disputed requests, despite Collins' assertions to the contrary. Costa Decl.
18  ¶ 3. Mr. Costa represents the company maintains its files by name of the insured, and JC Penney does
19  not have a data base that would permit retrieval of responsive claims files based on the variables
20  identified in the propounded discovery (*i.e.* claimant name, state of residence, or type of AD&D
21  certificate). Costa Decl. ¶ 3. "JC Penney Life does not code, file or store its claims files based upon
22  the contentions made regarding the cause of the insured's death." Costa Decl. ¶¶ 3-4. The accident or
23  cause of death contentions associated with any given claim could only be ascertained by "obtaining a
24  copy of every claim file and reviewing it."[7]  Costa Decl. ¶ 4. Collins' speculation to the contrary is

25

26      [7]      Mr. Costa describes the process JC Penney would need to undertake. He represents that
27           between January 1, 1997 and December 31, 2001, JC Penney processed 24,361 accidental
             death claims files. Costa Decl. ¶ 5. He estimates retrieval, review, and selection of responsive
             files would require in excess of 2,600 person-hours and costs in excess of $78,000.00, plus
28           copying costs, and attorney time to remove private and confidential consumer information
             such as medical and autopsy reports, social security numbers, credit card information and the

Case 3:02-cv-00674-L-LAB   Document 21   Filed 05/06/03   PageID.716   Page 10 of 19

1  insufficient to overcome JC Penney's showing of high costs and undue burden.

2       Collins argues in reliance on <u>Colonial Life v. Superior Court</u>, 31 Cal.3d 785 (1982) that the

3  other insureds discovery is needed to document pattern and practice to support her bad faith claim does

4  not mean she has no other, less burdensome way to establish liability. However, <u>Colonial Life</u> provides

5  "a plaintiff may establish a claim showing *either* that the acts that harmed him were knowingly

6  committed *or* were engaged in such a frequency as to indicate a general business practice." <u>Colonial</u>

7  <u>Life</u>, 31 Cal.3d at 792 (permitting discovery of 35 other claims files handled by the same adjuster but

8  imposing procedural safeguards). Unlike the 35 identified files at issue in <u>Colonial Life</u>, JC Penney

9  represents it has processed approximately 4,872 claims per year since 1997. Jnt Stmt 17:22-23; Costa

10  Decl. ¶ 5. The circumstances and respective burdens here are distinguishable. *See* <u>Mead Reinsurance</u>

11  <u>Co. v. Superior Court</u>, 188 Cal.App.3d 313, 320-322 (1986) (limiting access to information about

12  certain insureds, characterizing plaintiff's request for the production of the insurer's claim files related

13  to every similar claim as a "fishing expedition," and rejecting the original breadth of the request because

14  it would "impose the oppressive burden upon defendants of formulating a case against themselves, a

15  requirement which goes far beyond the bounds of our adversary system of justice").

16       JC Penney contends in conclusory argument: "The cost to obtain and review claim files would

17  exceed the $90,000 policy limits available to Mrs. Collins![[8]] Plaintiff's offer to limit the production

18  to files handled by the same claim handlers will not ease the burden. JC Penney wold still have to pull

19  every California accidental death claim file to determine who handled the claim." Jnt Stmt 18:4-8.

20  However, the Costa Declaration does not address the effect on the burden and costs under the narrowed

21  scope Collins proposes in the Joint Statement. JC Penney shall provide Collins with competent

22  testimony either to support its representation it has no less burdensome means of narrowing the number

23  of claims files to those handled by the four adjusters Collins identifies other than retrieval and manual

24  inspection of all California accidental death claims files or to make a show alternative means, burden,

25  and costs involved in identifying claims files handled by the four individuals in the relevant time period.

26  \\\\

27  _____

28      like. Costa Decl. ¶¶ 5-11; Costa Decl. Ex. "A".

     [8]    The basis for this policy limit calculation is not provided.

1      In addition, Collins' claims under the California Business and Professions Code, sections 17200

2 *et seq.*, prohibiting "any unlawful, unfair or fraudulent business act or practice," cannot be pursued in

3 the abstract. She must demonstrate she personally has been harmed by such an identified act or practice

4 before information about others' experiences and files are germane to her suit. At present, she relies

5 on the unsubstantiated presumption that if she obtained those thousands of other files, she could

6 demonstrate claims similar to hers were improperly denied, making it more likely her denial was also

7 improper. However, the starting point must be JC Penney's treatment of Collins' claim. Her present

8 showing does not go beyond speculation that perhaps other insureds were wrongfully denied benefits.[9]

9      The court has eliminated relevance to punitive damages and representative capacity standing

10 from the balance for purposes of resolving the Joint Statement disputes. *See* Section II.B, above. The

11 court finds the overly burdensome response requirements, the implications for third parties' privacy

12 rights, and the associated costs to JC Penney outweigh Collins' present showing of relevance and need

13 for the Category One discovery. Collins' expert apparently has access to statistical information of a

14 kind adequate for him to form opinions in his report prepared for this case. Jnt Stmt 6:16-19; Ex. "E".

15 She represents her expert has relied on "previously obtained" information to conclude that the non-

16 payment rate of JC Penney's claims purportedly "is grossly out of the normal range for industry

17 practice." Jnt Stmt 6:16-19.

18      Based on the present state of the record, this court is persuaded the burden and expense of

19 Collins' proposed discovery of JC Penney's thousands of other insureds' identities and claims files

20 outweighs its likely benefit. Rule 26(b)(2)(iii); *see* Costa Decl.; Jnt Stmt pp. 17-18. Collins'

21 conclusory arguments are too speculative at the present time to offset the onerous production burden

22 of the Category One discovery. The needs of the case at this juncture, Collins' alternative, less

23 oppressive means of preparing and presenting her personal claims, and the privacy considerations raised

24 in opposition to this discovery, cause the court to sustain JC Penney's objections. Any future request

25 for discovery of other insureds' identities and claims files on a firmer foundation should be

26

27        [9]    JC Penney also argues Collins lacks standing to assert unfair business practices claims on
behalf of non-parties. Jnt Stmt, p. 14. Although the court decides these discovery disputes

28            on a different basis, the court acknowledges the argument that Collins has not brought this
case as a putative class action.

1   accompanied by a proposed Protective Orders adequate to safeguard the consent and privacy interests

2   of potentially affected third party insureds. *See, e.g.*, Colonial Life, 31 al.3d 785.

3       **D.   Category Two Discovery Issues**

4       "Plaintiff requests and JC Penney objects to discovery of JC Penney's general sales and claim

5   statistics from 1995 to 2002 and JC Penney's financial information to support plaintiff's punitive

6   damages claim, including profit/loss ratios," *i.e.*, "punitive damages discovery." Jnt Stmt 20:6-8. This

7   dispute affects Collins' Interrogatories Nos. 5-11[10], 14-18,[11] her document production requests Nos.

8   47[12] and 48,[13] and her "30(b)(6) deposition notices for JC Penney representative[s] knowledgeable on

9   corporate finance information."[14] Jnt Stmt 20:8-9. Collins has not demonstrated the relevance of JC

10  Penney's financial records other than to her claim for punitive damages. The court has declined to

11  order punitive damages discovery at this time in any of the four disputed categories, without prejudice

12

13

14

15

16  [10]  *See* Joint Statement, Exhibit "A", pp. 3-4. These interrogatories seek information about JC
        Penney AD&D benefits claims in California for the years 1995 through 2002, such as number
17      of claims made, number paid, number denied, number denied in reliance on particular policy
        exclusions, number considered abandoned, gross revenues collected for premiums paid by
18      California residents for AD&D policies, and amount paid out for California claims.

19  [11]  *See* Joint Statement, Exhibit "A", pp. 4-5. These interrogatories seek to identify the persons
        most knowledgeable about profit-loss ratios and general financial condition of JC Penney and
20      any parent company for the years 1995 through 2002, the number of AD&D insurance
        certificates  JC Penney sold to California residents in 1996 through 2002 using the same
21      telemarketing script (already identified and produced) as was used to sell plaintiff's decedent
        his AD&D policy, the number of claims made under certificates sold using that script, and the
22      denials made in reliance on specified policy exclusions.

23  [12]  "All DOCUMENTS which state or reflect the gross revenue received by YOU from collection
        of premiums for AD&D insurance for each of the years 1995, 1996, 1997, 1998, 1999, 2000,
24      2001 and 2002." Jnt Stmt Ex. "B", p. 11.

25  [13]  "All DOCUMENTS which refer or relate to the amount of money paid out by YOU during
        each of the years 1995, 1996, 1997, 1998, 1999, 2000, 2001 and 2002 pursuant to AD&D
26      insurance claims made." Jnt Stmt Ex. "B", p. 11.

27  [14]  The court assumes the reference is to the second Most Knowledgeable Person description in
        Collins' Notice of Deposition With Request For Production Of Documents: "The person most
28      qualified to testify about YOUR loss ratio (the relationship of gross income from premiums
        to amounts paid out on claims) for YOUR AD&D insurance products for each of the years
        1996 through 2002." Jnt Stmt Ex. "D" p. 8.

1  to a later showing of relevance and need.[15]  JC Penney's objections to production of responsive

2  discovery in Category Two are accordingly sustained, without prejudice to a future showing of

3  relevance and need.

4  **E.    Category Three Discovery Issues**

5       "Plaintiff requests production of claim handling manuals.  Plaintiff requests and JC Penny

6  objects to discovery of all marketing materials used by JC Penney generally and in the sale of AD&D

7  insurance from 1995 to the present, and solicitation scripts and marketing materials provided to other

8  insureds whose claims under AD&D policies were denied." Jnt Stmt 28:8-10.  This dispute affects

9  Collins' Document Production Request Nos. 7, 8, 27, 28, and 51.[16]

10      JC Penney represents, with respect to its claims handling manuals, it "did not object to this

11  request, agreed to produce documents responsive to this request, and has produced the California Fair

12  Claims Settlement Practices Regulations which JC Penney's claim handlers use to review claims in

13  California." Jnt Stmt 30:23-26. It claims not to have "additional documents responsive to this request."

14  Jnt Stmt 30:26-27.  Collins contends the request is broader than JC Penney's interpretation.

15      The court finds written materials used by JC Penney personnel to guide the investigation,

16  handling, or processing of claims in California under the AD&D policy type at issue for the period 1996

17  through 2002, are relevant and discoverable.  To the extent JC Penney may have excluded from

18  Category Three documents which JC Penney agents used but which are not  necessarily unique  to the

19  California market, the court finds those more general materials are also relevant and discoverable.

20  \\

21

---

22      [15]    Furthermore, Collins does not demonstrate how "statistical" data will provide evidence that
23  JC Penney "regularly denied *legitimate* claims." Jnt Stmt 24:18 (emphasis added). To
    establish the legitimacy of any claim and any claim denial, the particular facts and
24  circumstances surrounding each claim would have to be individually examined. JC Penney
    represents it "would be forced to manually go through each file to determine its status for the
25  purpose of statistical analysis." Jnt Stmt 26:20-21; Costa Decl. ¶6. To the extent JC Penney
    would have to create statistical compilations in order to comply with the Category Two
26  requests that further burden weighs against ordering such discovery. JC Penney refers Collins
    to public records as a source to identify  the company's profitability, suggesting
27  Rule 26(b)(2)(i) objections may also have been advanced ("(i) the discovery sought is . . .
    obtainable from some other source that is more convenient, less burdensome, or less expensive
28  . . . ."

        [16]    *See* Joint Statement, Exhibit "B", pp. 6-9, 11.

1   It appears JC Penney has already produced the actual telephone solicitation presentation used

2   for sale of the AD&D insurance under policy Form GC302 in California for the years 1996 through

3   2001.  *See* Jnt Stmt Ex. "C", pp. 4-5.  The court finds any other materials JC Penney personnel used to

4   guide the promotion, marketing, or sale in California of the type of AD&D insurance at issue in this

5   case, for the period during which Collins was solicited to purchase the AD&D policy through the claim

6   initiation are also relevant and discoverable at this time.

7   However, unless JC Penney has previously identified the "other insureds whose claims under

8   AD&D policies were denied," it may be unable to fully comply with the requests as propounded (*i.e.*

9   " . . . . materials provided to other insureds whose claims under AD&D policies were denied").  Jnt

10  Stmt 28:9-10.  The court finds the requests overbroad to the extent strict compliance would require JC

11  Penney to identify and examine the very claims files the court elsewhere in this Order has declined to

12  require.  JC Penney need only produce those Category Three materials it has already produced plus

13  those additional materials, if any, the court has described above.

14  **F.    Category Four Discovery Issues**

15  Collins objects to certain of JC Penney's responses to Requests For Admission she represents

16  "could not reasonably be denied or objected to."  Jnt Stmt 32:2-3.  This dispute is presented as affecting

17  Collins' Requests For Admissions Nos. 10[17], 13, 17[18], 20[19], and 22 through 25.[20]  The articulation of

18  Category Four disputes also alludes to Interrogatories.  Jnt Stmt 32:2.  However, the parties elaborate

19  _____

20  [17]   Admission Request No. 10:  "During the transjugular intrahepatic protal systemic shunt
        ("TIPS") procedure that Lawrence Collins underwent at the UCSD Medical Center on March
21      3, 1998, his liver was accidentally punctured and he thereafter died of a massive hemorrhage
        within the abdomen."  Jnt Stmt Ex. "C", p. 4.
22

    [18]   Admission Request No. 17:  "When an inquiry is made to YOU about accidental death
23      benefits following a loss, YOU send to every claimant a letter which includes language to the
        effect that the benefit 'is paid only if the covered person suffers a covered loss as a result of
24      injury, directly and independently of all other causes' and 'there are no provisions in the
        contract for loss due to natural causes.'"  Jnt Stmt Ex. "C", pp. 4-5.
25

    [19]   Admission Request No. 20:  "The sales presentation to Lawrence Collins on or about May 24,
26      1998 which utilized the Script, attached as Exhibit A, constituted an 'Invitation to Contract'
        as that term is defined in Title 10, California Code of Regulations, Article 12, Section
27      2535.3(I)."  Jnt Stmt Ex. "C", p. 5.

28  [20]   Admission Request No. 23 is listed in the statement of dispute for this issue, but is not argued
        thereafter.  The court accordingly disregards that item.

1 | only Request For Admission disputes, so the court disregards the unelaborated allusion to purportedly
2 | inappropriate "Interrogatory objections."

3 | Requests for admission are permitted to ascertain "the truth of any matters within the scope of
4 | Rule 26(b)(1)" or the genuineness of any relevant document. Rule 36(a). A proper response to an
5 | admission request consists of an admission, a denial, or a statement detailing why the responding party
6 | is unable to admit or deny the matter. *See* Asea, 669 F.2d at 1245.

> [A] response which fails to admit or deny a proper request for admission does not
> comply with the requirements of Rule 36(a) if the answering party has not, in fact, made
> "reasonable inquiry," or if information "readily obtainable" is sufficient to enable him
> to admit or deny the matter. A party requesting an admission may, if he feels these
> requirements have not been met, move to determine the sufficiency of the answer, to
> compel a proper response, or to have the matter ordered admitted. . . . [T]he district
> court should ordinarily first order an amended answer . . . .

11 | Asea, 669 F.2d at 1247 (citing David v. Hooker, Ltd., 560 F.2d 412, 418-19 (9th Cir. 1977); French v.
12 | United States, 416 F.2d 1149, 1152 (9th Cir. 1969).

13 | An admission request may properly target an issue of historical fact susceptible of confirmation
14 | or qualification. *See* Holmgren v. State Farm Mut. Auto Ins. Co., 976 F.2d 573, 579-81 (9th Cir. 1992)
15 | (requiring a factual predicate for a denial and recognizing the good faith duty imposed by Rule 36(a)
16 | to "qualify an answer or deny only a part of the matter" and to specify so much of a request as is true).
17 | The responding party must admit or deny each request or provide a statement detailing why it is unable
18 | to admit or deny the matter. *See* T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174
19 | F.R.D. 38, 43 (S.D.N.Y. 1997). If the responding party objected to the request "based on issues other
20 | than historical fact, good faith required it to qualify its denials to make clear that it conceded matters
21 | of historical fact." Holmgren, 976 F.2d at 581. Denials must be tailored "to fairly meet the substance
22 | of the requested admission." Rule 36(a) ("when good faith requires that a party qualify an answer or
23 | deny only a part of the matter of which an admission is requested, the party shall specify so much of
24 | it as is true and qualify or deny the remainder").

25 | "The party who has requested the admissions may move to determine the sufficiency of the
26 | answers or objections. . . . **If the court determines that an answer does not comply with the**
27 | ***requirements of this rule,*** it may order either that the matter is admitted or that an amended answer be
28 | served." Rule 36(a). The court's role during discovery is thus to ensure the formalities of the Rule are

1   observed.  As long as a responding party's answer is adequate to satisfy the technical requirements of

2   Rule 36, the court is not empowered to compel Defendants to change an answer to conform to the

3   "truth" or to any particular theory or other evidence, contrary to Collins' suggestion.[21]  *See* Reply 1:27.

4   The effect and remedy for failure to admit matters thereafter proved at trial are covered by Rule 37(c).[22]

5          JC Penney apparently provided a "Deny" response to Request No. 10.  Its Joint Statement

6   explanation incorporates its interpretation of the policy language as excluding coverage when the claim

7   arises as a result of medical or surgical procedures to treat disease.  Request No. 10 uses language that

8   could be construed as an admission Mr. Collins' death was "accidental" within the meaning of the

9   AD&D policy provision controlling the coverage question, a disputed fact.  Jnt Stmt Ex. "C", p. 4.

10  Collins contends she is "entitled to an admission to the entire request" because she finds "incredible"

11  that JC Penny can deny certain historical facts embodied in the request.  Jnt Stmt p. 32.  Nevertheless,

12  the court finds JC Penney can and should elaborate a qualified response to Request No. 10, admitting

13  any component parts it can and denying other portions, if necessary to avoid unwarranted and unfair

14  inferences, while achieving the Rule 36 goal of narrowing issues for trial.  *See* <u>Diedrich v. Dept. of</u>

15  <u>Army</u>, 132 F.R.D. 614, 619 (S.D.N.Y. 1990).

16         Requests numbered 13, 22, and 23 ask JC Penney to admit the genuineness of particular

17  documents  provided  as  exhibits  (a  copy  of  Mr.  Collins'  death  certificate  with  attending

18  physician/coroner's Amendment; the telephone solicitation presentation used for sale of the AD&D

19  insurance under policy Form GC302 in California for the years 1996 through 2001; and the telephone

20  _____

21  ²¹   "How defendant can deny those parts of the request is beyond pale.  Plaintiff is entitled to an
         admission to the entire request."  Jnt Stmt 32:25-26.

22
    ²²   The consequences of unreasonable denials of admission requests include sanctions for the
23       costs incurred by the other side of proving the matter at trial. "If a party fails to admit the
         genuineness of any document or the truth of any matter as requested under Rule 36, and if the
24       party requesting the admissions thereafter proves the genuineness of the document or the truth
         of the matter, the requesting party may apply to the court for an order requiring the other party
25       to pay the reasonable expenses incurred in making that proof, including reasonable attorneys'
         fees. The court shall make the order unless it finds that (A) the request was held objectionable
26       pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C)
         the party failing to admit had reasonable ground to believe that the party might prevail on the
27       matter, or (D) there was other good cause for the failure to admit."  Rule 37(c)(2); *see*
         Advisory Committee Note ("The sanction for failure of a party to inform himself before he
28       answers [a request for admission] lies in the award of costs after trial, as provided in Rule
         37(c)"); <u>Marchand v. Mercy Med. Center</u>, 22 F.3d 933, 937 (9th Cir. 1994).

1  solicitation presentation for the year 1995). Jnt Stmt Ex. "C", pp. 4-5. JC Penney provided a response

2  that it could neither admit or deny Request No. 13 regarding the genuineness of the death certificate,

3  contending the "document should be authenticated by the Medical Examiner's office." Jnt Stmt 33:22-

4  23. The court finds JC Penney can and should be compelled to admit or deny the genuineness of the

5  documents for purposes of establishing whether Collins will be obliged to prove the document's

6  genuineness at trial. The court also overrules JC Penney's apparent objection that its authentication of

7  the genuineness of its own solicitation materials described in Admission Request Nos. 22 and 23 would

8  be "irrelevant." Jnt Stmt 36:4-5. The court finds JC Penney must provide a response for each of those

9  requests that satisfies Rule 36, not merely an objection.

10  As its response to Admission Requests Nos. 17[23] and 18,[24] JC Penney apparently objected that

11  each is "over broad, burdensome, oppressive, and irrelevant." Jnt Stmt 34:4-5. Those requests seek

12  admissions regarding the company's usual practices in response to claimants' benefits inquiries. JC

13  Penney elaborates its objection that the request asks "for information regarding other clams

14  information" and is objectionable for the same reasons as the Category One issues. Jnt Stmt 34:20-21.

15  The court rejects JC Penney's relevancy objection as inadequate to avoid the obligation to provide some

16  response to the factual components of the request. JC Penney must formulate an answer, after good

17  faith investigation of sources reasonably available to it, excluding other insureds' claim files for the

18  reasons discussed above, qualifying the responses in accordance with Rule 36, if necessary.

19  Request No. 20 asks JC Penney to admit the script used in the sale of the insurance at issue is

20  an "Invitation to Contract" within the meaning of that term in California Insurance Code. The parties

21  agree a date was misstated in the request, and JC Penney apparently denied the request on that technical

22  basis. JC Penney contends even with the corrected date, it "cannot completely admit" the matter,

23

24  [23] "When an inquiry is made to YOU about accidental death benefits following a loss, YOU send

25  to every claimant a letter which includes language to the effect that the benefit 'is paid only if the covered person suffers a covered loss as a result of injury, directly and independently

26  of all other causes' and 'there are no provisions in the contract for loss due to natural causes.'" Admission Request No. 17, Jnt Stmt Ex. "C" 4:24-5:3.

27  [24] "When an inquiry is made to YOU by a claimant about accidental death benefits following a

28  loss, YOU do not at that time disclose to the claimant all benefits, coverages, time limits or other provisions that may apply to the claim." Admission Request No. 18, Jnt Stmt Ex. "C" 5:4-6.

1  although it now states "JC Penney does not deny that the solicitation script is an 'Invitation to

2  Contract.'" Jnt Stmt 35:19-22.  The court finds JC Penney must provide a formal response to this

3  request, with qualification if needed, in accordance with its Rule 36 obligations.

4      Admission Request No. 24 asks JC Penney to admit: "For each of the years 1995 through 1999,

5  of the number of accidental death and dismemberment benefit claims made to YOU, where California

6  was the issue state, greater than 50% of the claims made were not paid (that is, YOU either denied the

7  claim or considered the claim abandoned)." Jnt Stmt Ex. "C" 5:24-6:2.  JC Penney apparently objected

8  the request is "over broad, burdensome, oppressive, and irrelevant" without providing even a qualified

9  answer. Jnt Stmt 36:26-27.  The court overrules the relevancy objection.  The court finds JC Penney

10 must admit, deny, or "set forth in detail the reasons why [it] cannot truthfully admit or deny the matter."

11 Rule 36(a).  To the extent JC Penney relies on its position statement with respect to Category 2 -- that

12 absent "a coverage analysis of each and every claim, the rate of non-payment is misleading and

13 prejudicial" (Jnt Stmt 37:16-18) -- Rule 36 permits qualification of a response to mitigate unfair and

14 unwarranted inferences.  See Diedrich, 132 F.R.D. at 619, quoting Flanders v. Claydon, 115 F.R.D. 70,

15 71- 72 (D.Mass.1987) ("[g]enerally, qualification is permitted if the statement, although containing

16 some truth, '... standing alone out of context of the whole truth ... convey[s] unwarranted and unfair

17 inferences'") (citation omitted).  If no such statistical confirmation is available to JC Penney after

18 investigation, excluding a search of individual claim files, it shall so state in a substantive supplemental

19 response in accordance with its Rule 36 obligations.

20      Finally, JC Penney "admits Request No. 25."[25] Jnt Stmt 38:6.  This dispute is accordingly moot

21 and should have been deleted from the Joint Statement, with JC Penney providing formally to Collins

22 the requested admission.

23 \\

24 \\

25 \\

26

27      [25]   Admission Request No. 25:  "Each of YOUR employees Jo Ann Baines, James Rydberg,
       Doug Sudduth and Judy Lovelady (disclosed in YOUR Initial Disclosures as persons having
28     discoverable information) are 'managing agents' as that term is defined for purposes of
       California Civil Code Section 3294(b)." Jnt Stmt Ex. "C", p. 6.

## III.   CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1.   Collins' requests to compel discovery as relevant to Collins' punitive damages claims or in a purported representative capacity are **DENIED**, without prejudice to a future showing.

2.   Collins' Category One requests to compel discovery of JC Penney's other claims files and other insureds' identities is **DENIED**, without prejudice.  JC Penney shall provide Collins with a supplemental Declaration from a qualified party representative regarding processes available to it for identifying AD&D claims files by name of the claim handler to support the contention its objections on grounds of oppression, burden, and costs are not alleviated by Collins' narrowing of the scope of her Category One requests.

3.   Collins' Category Two request to compel discovery of JC Penney's sales and claims statistics and financial information is **DENIED** as premature punitive damages discovery.

4.   Collins' Category Three request to compel discovery of claims handling and marketing materials is **GRANTED IN PART**, as discussed above. Within ten days of the date this Order is entered, JC Penney shall produce additional materials within the scope of the discussion above, if any. In the alternative, if no additional responsive documents exist, then JC Penney shall provide Collins a supplemental written response so stating.

5.   Collins' request that the court order JC Penney to change its responses to any of the Category Four disputed Requests For Admission on grounds the facts requested to be admitted are not substantively debatable is **DENIED**.  JC Penney shall, however, provide supplemental responses to Request Nos. 10, 13, 17, 18, 20, and 24 to conform to the technical requirements of Rule 36.

6.   Any decisions regarding bifurcation of contract liability from other claims or bifurcation of damages issues, other than as addressed herein, are deferred until such time as the parties present those issues for resolution by the District Judge assigned to this case.

**IT IS SO ORDERED.**

DATED:  5-5-03

HONORABLE LARRY A. BURNS
United States Magistrate Judge

cc:   DISTRICT JUDGE M. JAMES LORENZ
      ALL COUNSEL OF RECORD